FILED
2011 Jul-27  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER MIDDLEBROOKS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| **vs.** ) | **5:10-cv-2190-AKK** |
| ) | |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,** ) ) ) ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Christopher Middlebrooks ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed his application for a period of disability and disability

insurance benefits on June 19, 2007, alleging a disability onset date of May 17, 2006, from injuries sustained in a motor vehicle accident. (R. 92, 192). After the denial of his application on August 17, 2007, (R. 68), Plaintiff requested a hearing before the ALJ on October 10, 2007. (R. 73). Around July 2008, Plaintiff was incarcerated and is currently serving a twenty-five year sentence. (R. 58). Almost two years later, on March 23, 2010, the ALJ conducted a telephonic hearing. (R. 51). On April 8, 2010, the ALJ denied the claim, (R. 6-21), which became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review. (R. 1-3). Plaintiff then filed this action for judicial review pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).

Plaintiff, who was 39 years old at the time of the hearing, has not engaged in substantial gainful activity since the alleged onset date of disability of May 17, 2006. (R. 54, 55, 92). His past relevant work included medium and skilled work as an inspector and vinyl siding installer, and medium and semi-skilled work as a drywall applicator/sheet rock finisher and sign installer. (R. 60). Plaintiff's Complaint alleges he suffers from "several disorders that require psychotropic medications that would evidence the inability of the plaintiff to return to gainful activity pursuant to 20 C.F.R. § 416.965." Doc. 1 at 3. His Disability Report alleges also that he suffers from "crushed right heel, broken left heel, brain injury,

spastic colon." (R. 119).

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings

even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.' *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

Performing the five step analysis, initially, the ALJ determined that although Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One, his prison job as a representative in the honor dorm is "indicative of his ability to work and is given consideration below in assessing the claimant's credibility as to his allegations of total disability." (R. 11). The ALJ acknowledged that Plaintiff's combination of severe conditions of right heel fracture with post-traumatic arthritis, left heel fracture, mild arthritis and tendinitis of right knee, and non-specific psychosis met Step Two. (R. 11). As it

relates to Step Two, the ALJ did not consider the spastic colon contention because the record evidence did not reveal "that any physician diagnosed [Plaintiff] with or prescribed [him] medications for such complaints." *Id*. Likewise, the ALJ did not consider the subarachnoid and subdural non-operative intracranial hemorrhages in assessing disability because the treating neurologist, Dr. Pickett, noted that Plaintiff had "recovered well" and had a normal follow up CT scan. *Id*. Nonetheless, having determined that Plaintiff met Step Two, the ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since his physical impairments neither met nor equaled the requirements for any listed impairment. (R. 12). In Step Four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work "except he should be restricted to unskilled nature work due to not more than moderate limitations in understanding, remembering, and/or carrying out instructions." (R. 13). Further, the ALJ held that Plaintiff could not perform his past relevant work as a medium and skilled inspector and drywall applicator/ sheetrock finisher, or a medium and semi-skilled sign installer and vinyl siding installer, because they exceed his current residual functional capacity of sedentary, unskilled work. (R. 19). Lastly, in Step Five, the ALJ considered Plaintiff's age, education, work experience, residual functional capacity, and impairments, and determined that there are a significant number of

jobs in the national economy that Plaintiff can perform.  (R. 20).  Accordingly, the ALJ determined that Plaintiff is not disabled.  *Id*.

Plaintiff contends that the ALJ committed reversible error by not allowing him to have representation at the hearing in violation of his due process rights, and moves the court to remand this case so that "plaintiff hereto be allowed to obtain counsel, and a new hearing be set-down to consider the disability claim de novo." Doc. 1 at 2-3.

## V. Analysis

A.   *The ALJ did not err in conducting Plaintiff's administrative hearing in the absence of counsel.*

At all relevant times, the Commissioner advised Plaintiff of his right to counsel.  Indeed, the hearing request form Plaintiff completed on October 10, 2007, states that all claimants have "a right to be represented at the hearing.  If you are not represented but would like to be, your Social Security office will give you a list of legal referral and service organizations."  (R. 73).  Further, the form states that a claimant's representative, if any, should complete section 9.  *Id*.  At the time of his application, Plaintiff left section 9 blank since he was unrepresented at the time.  Indeed, the section completed by the SSA reflected that Plaintiff did not have counsel.  *Id.*

Four months later, on February 19, 2008, Plaintiff completed an Appointment of Representative form identifying Charles Binder ("Binder") as his lawyer. (R. 46). Subsequently on November 12, 2008, the SSA sent Binder notice of receipt of Plaintiff's request for a hearing. (R. 40). However, Binder withdrew as Plaintiff's attorney sometime after November 2008. (R. 38-43, 53). Consequently, since Plaintiff was unrepresented, on March 12, 2009, the SSA sent Plaintiff a notice explaining what to expect and how to prepare for the hearing. (R. 31). The notice again informed Plaintiff of his right to have a lawyer represent him and provided him information on several lawyer referral services. *Id.* Apparently, Plaintiff made no attempts to obtain new counsel or had no success.

Approximately one year later, on March 10, 2010, the Commissioner sent Plaintiff notice of his March 23, 2010, telephonic hearing. (R. 26). When the hearing started, the ALJ asked Plaintiff if he tried to get an attorney after his previous attorney withdrew and Plaintiff responded no. (R. 53). Despite the multiple notices he received throughout about his right to counsel and lawyer referral listings the SSA provided, Plaintiff complained that he did not receive the hearing notice until one day prior to his hearing and requested a postponement to retain an attorney. (R. 53). That is, even though his lawyer withdrew at least a year prior to his hearing, he wanted the ALJ to delay the hearing. When the ALJ

responded that the case was "aged" and that "we have to hear it," Plaintiff stated, "[o]kay, so that'd [sic] be fine then," and the ALJ proceeded with the hearing. (R. 181). There is no evidence in the record that Plaintiff has since attained counsel or attempted to contact a lawyer referral service.

This court finds that the ALJ committed no error in conducting the hearing for several reasons. First, all the notices sent to Plaintiff provided information on lawyer referral services, in compliance with 20 C.F.R. § 404.916(b). Second, Plaintiff testified that he made no effort to retain counsel after Binder withdrew. Third, the ALJ scheduled the hearing almost a year after Plaintiff requested it meaning that the Plaintiff had ample time to obtain counsel if he wanted to do so. In effect, the ALJ did not bar Plaintiff from obtaining counsel by holding the hearing; rather, Plaintiff failed to secure counsel and cannot now seek to transfer his failure to exercise diligence to the ALJ. Lastly, even if counsel was present, as discussed below, the record evidence substantially supports the ALJ's non-disability finding. No counsel, skilled or unskilled, could overcome the evidentiary record here – i.e., Plaintiff's failure to demonstrate that he cannot engage in any substantial gainful activity. Therefore, to the extent the ALJ erred by going forward with the hearing – and this court finds he did not – any such error was harmless.

B.   *The ALJ's finding that Plaintiff is not disabled is supported by substantial evidence.*

   1.   Injuries sustained in the motor vehicle accident

Plaintiff's injuries included, among other things, bilateral heel fractures. (R. 192). The ALJ considered Plaintiff's age, education, work experience, and the vocational expert's testimony that Plaintiff could perform sedentary and unskilled work to find Plaintiff non-disabled. (R. 20). The ALJ's decision is supported by substantial evidence; in this case the medical record simply does not support Plaintiff's contention that he is disabled under the Act.

The court notes that, Dr. David Griffin, an orthopaedic surgeon, consulted on Plaintiff's treatment during Plaintiff's hospitalization after the motor vehicle accident and treated Plaintiff after his discharge. (R. 203). Specifically, three months after the accident, on October 13, 2006, Dr. Griffin performed a right subtalar fusion and lateral exostectomy with decompression of the peroneal tendon. (R. 258-60). He discharged Plaintiff on October 16, 2006, and prescribed Lortab for pain and instructed to resist weight-bearing on the right lower extremity. *Id.*

On October 26, 2006, when Plaintiff received his post-operative follow up, Dr. Griffin commented in his treatment notes that Plaintiff "presents today without

complaint" and that he instructed Plaintiff to continue non-weight bearing status. (R. 390). Dr. Griffin echoed similar comments during Plaintiff's November 2006 reevaluation. (R. 389). Satisfied with Plaintiff's progress, on December 5, 2006, Dr. Griffin prescribed physical therapy and noted that Plaintiff "may gradually advance his weight bearing over the next four weeks on the right lower extremity." (R. 388). Dr. Griffin noted also that Plaintiff states that "he continues to have pain . . . but overall feels that his symptoms are slowly improving." *Id.*

At Plaintiff's next visit on January 7, 2007, Dr. Griffin noted that Plaintiff "presents today ambulatory on his foot and states that his function and symptoms are slowly improving" and, as a result, recommended that he "continue to advance his activity." (R. 387). A few months later on March 15, 2007, Dr. Griffin reevaluated Plaintiff and commented that he was "independently ambulatory," "minimally symptomatic," and that his right knee was painful after walking one to two miles. (R. 386). Thereafter, on June 7, 2007, Dr. Griffin's treatment notes indicate again that Plaintiff was "independently ambulatory," "is not having any particular difficulty with regard to his foot," "is up to walking three miles a day," and that his right subtalar joint fusion was "healed" and "functioning well." (R. 385). Three months later, on September 24, 2007, Dr. Griffin evaluated Plaintiff and described him again as "independently ambulatory" and commented that

Plaintiff's "gait pattern is essentially normal." (R. 423).

The next month, on October 9, 2007, <u>after</u> the SSA denied Plaintiff's application and just a day before Plaintiff requested a hearing, Dr. Griffin opined incredibly that "due to the severity of [Plaintiff's] injury, I believe he will likely be disabled for a minimum of twelve months, and would therefore qualify for disability benefits through the state." (R. 422). To no surprise, the ALJ assigned "such evidence little weight in assessing the claimant's residual functional capacity" because Dr. Griffin's <u>own</u> treatment records belie this finding. (R. 17).

The ALJ's decision is supported by the evidence. In fact, just eight months after his motor vehicle accident and only five months after his surgery, Dr. Griffin described Plaintiff as "independently ambulatory" after Plaintiff informed him that he was walking at least one to two miles a day. (R. 386). Three months later, Plaintiff informed Dr. Griffin that he "is up to walking three miles a day." (R. 385). Plaintiff's reports are consistent with his physical therapy visit note on January 30, 2007, which indicated that Plaintiff met all of his goals, including ambulation on level surface, balance, and strength. (R. 308). Because the record evidence indicates that Plaintiff's potentially disabling condition after his motor vehicle accident did not last for twelve months and, in fact, ended well before October 9, 2007, the ALJ's decision to attribute little weight to Dr. Griffin's

opinion is supported by substantial evidence.

The court notes also that it appears Plaintiff performs a sedentary and unskilled job at Limestone Correctional Facility as a representative in the honor dorm. (R. 58). According to Plaintiff, for the last year and a half, his responsibilities include ensuring that "everybody in the dorm is following the rules and regulations." *Id*. Because he cannot walk around, his crew chief works on the floor and "makes sure that everybody's doing their job and if they're not doing their job he brings them to my office where I can write them up and add whatever infraction they need." *Id*. While this evidence may not be conclusive of substantial, gainful activity, in addition to the above, it substantially supports the ALJ's finding that Plaintiff is capable of performing sedentary and unskilled work.

2.  Psychosis

Plaintiff seeks also disability for a psychological condition. However, the record evidence here shows no diagnosis of a psychological condition prior to Plaintiff's incarceration in July 2008. Therefore, to the extent that Plaintiff is claiming disability eligibility based on a psychological diagnosis he received *after* his incarceration, his claim is denied because an individual is not eligible for SSI benefits while incarcerated. *See* 20 C.F.R. § 416.211(a). Alternatively, even if the court considered Plaintiff's psychological condition since his incarceration, the

record does not reveal that he is disabled because Plaintiff's condition improved between the date of his initial Mental Health Services diagnosis on September 1, 2008, (R. 477), and the most recent mental health evaluation on March 19, 2009, (R. 448). In fact, the treatment notes indicate that he had "no problems to report," "denies hearing voices," "no auditory hallucinations reported," and that he "is currently stable with meds." (R. 448). Therefore, the ALJ did not err in finding that Plaintiff had no mental limitations that would prevent him from performing sedentary and unskilled work. (R. 19).

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The Commissioner's final decision is, therefore, **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 27th day of July, 2010.

*[signature: Abdul Kallon]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE